**Charlena EDWARDS, Plaintiff,**

v.

**ATRIUM VILLAGE; Atrium Village Associates; Metroplex, Inc.; Chicago Orleans Housing Corporation; Crane Construction Company; and O & M Professional Associates, also known as Illinois Remanco Inc., Gregory M. Heine, and Bobbi Corbett, Defendants.**

**No. 83 C 9299.**

United States District Court, N.D. Illinois, E.D.

Aug. 11, 1989.

Judy I. Mitchell–Davis, Stanley L. Hill, Stanley L. Hill & Associates, P.C., Chicago, Ill., for Charlena Edwards.

Burtis Dougherty, Dept. of Justice, Housing & Civ. Enforcement Section, Civ. Rights Div., Washington, D.C., Nancy K. Needles, Asst. U.S. Atty., Chicago, Ill., for U.S.

Michael L. Shakman, Barry A. Miller, Miller, Shakman, Nathan & Hamilton, Chicago, Ill., for defendants.

## RULING ON PLAINTIFF'S MOTION FOR EXPEDITED TRIAL

BERNARD WEISBERG, United States Magistrate.

Charlena Edwards has moved for an expedited trial of her housing discrimination complaint against Atrium Village. Her case was filed on December 19, 1983. Edwards is now seventy-five years old and she complains that her case has become hostage to extended discovery proceedings in a related case brought by the United States, *United States v. Atrium Village*, 87 C 6527, 1988 WL 2778.

Edwards' Second Amended Complaint filed on December 4, 1986 alleges discrimination in violation of the Fair Housing Act of 1968, 42 U.S.C. § 3601 *et. seq.*[1] and Section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1982. Jurisdiction is based on former 42 U.S.C. § 3612 (now § 3613) and 28 U.S.C. § 1343(a)(4). Edwards, a black female, claims that since 1978, because of her race, sex and religion, she has been denied an opportunity to rent an apartment at Atrium Village, a government subsidized housing development.

*Facts* [2]

Defendant Atrium Village Associates is an Illinois limited partnership which is the beneficiary of the land trust holding title to the Atrium Village development. The general partners of Atrium Village Associates are defendants Chicago–Orleans Housing Corporation, an Illinois not for profit corporation (COH), and Crane Construction Co. (Crane). The members of COH are five neighborhood churches located near Atrium Village. Three of those churches are predominantly black and two are predominantly white in membership. Defendant Metroplex, Inc. has been the management company for Atrium Village since January 2, 1980. Defendant O & M Professional Associates (O & M), a black owned and operated firm, was the management company for Atrium Village from its inception until January 2, 1980. The individual defendants are Gregory M. Heine, Vice Presi-

1. The Fair Housing Act was substantially amended by Pub.L. 100–430, 102 Stat. 1636 (September 13, 1988) effective March 12, 1989 resulting in the renumbering of some sections.

2. Most of the facts in this ruling are drawn from the pleadings and evidentiary materials filed in connection with the defendants' first motions for summary judgment. A fuller statement of facts is contained in this court's Report and Recommendation on those motions dated August 19, 1986. See also this court's Report and Recommendation dated January 17, 1989 on the motion of Atrium Village Tenants for Integrated Living and certain individual Atrium Village tenants for leave to intervene in the related case, *U.S. v. Atrium Village*, 87 C 6527.

dent of defendant Crane, and Bobbi Corbett, property supervisor for Atrium Village employed by defendant Metroplex.

Atrium Village is a 309 unit apartment complex located at Division and Wells Streets in Chicago, one and a half blocks East of the Cabrini–Green housing project of the Chicago Housing Authority. For many years Cabrini–Green has been a segregated, all black, very low income public housing project and the surrounding area had significantly deteriorated. In the late 1960's five local churches formed COH with the primary goal of developing Atrium Village as a racially, socially, and economically integrated housing development. Atrium Village was financed with a mixture of public and private funding, including a mortgage loan from the Illinois Housing Development Authority (IHDA). The mortgage loan was insured by the U.S. Department of Housing & Urban Development (HUD), which also agreed to provide rental subsidy payments for a portion of the apartments in Atrium Village. Defendants claim that IHDA and HUD agreed to participate in the development only after receiving assurances from the developers that they would achieve and maintain racial integration, including the use of racial quotas, and that such quotas proved essential in order to achieve racially and economically integrated tenancy.

Charlena Edwards applied for a two-bedroom rent subsidized apartment in the elevator building at Atrium Village on August 22, 1978, during the initial rent-up period. Her application was rejected by letter dated October 15, 1978. In June 1979 Edwards filed a housing discrimination complaint against Atrium Village with the Chicago Commission on Human Relations. In July 1979 that complaint was dismissed after Atrium Village agreed to treat Edwards as first on the waiting list for a two-bedroom apartment of the type she requested. Atrium Village says that between 1979 and 1983 no two-bedroom apartment of that type became available. In November 1983 Edwards filed a racial discrimination complaint with HUD's office of Fair Housing and Equal Opportunity in Chicago. On December 19, 1983 Edwards filed the present action.

Subsequent to the filing of the HUD complaint, the defendant owners "created" an additional two-bedroom subsidized unit in the elevator building with the intention of offering it to Edwards if she qualified for tenancy and for the stated purpose of settling the litigation. In February 1984 Edwards completed a new application and a new credit check was run. According to the defendants, that credit check and other inquiries disclosed a poor credit record and a history of late rental payments and misstatements to the Chicago Housing Authority, her existing landlord. Defendants say that Edwards' new application was rejected in August 1984 on the ground that she did not meet Atrium Village's normal tenant requirements.

In Counts I and II of her Second Amended Complaint Edwards charges that the rejection of her original application in 1978 and the defendants' continuing refusal to rent her an apartment violate the Fair Housing Act and 42 U.S.C. § 1982. Count III alleges that the additional credit checks and review of her record as a Chicago Housing Authority tenant from January 1984 through August 1984 constituted retaliation and intimidation in violation of former 42 U.S.C. § 3617 (now § 3618). Count IV is a pendent state law claim that defendants fraudulently induced Edwards to dismiss the 1979 complaint she filed with the City of Chicago Commission on Human Relations by promising to place her first on the waiting list and give her the next available two-bedroom subsidized apartment.

Defendants deny that Edwards' race played any part in their refusal to rent her an apartment.[3] They claim that Edwards was not qualified to rent an apartment for

---

**3.** Although Edwards alleges sex discrimination, to date she has not submitted anything to support that claim. Her claim of discrimination on the ground of religion is based on defendants' admission that they have given preference to persons affiliated with sponsoring churches that are members of COH. The legal sufficiency of that claim, added in the Second Amended Complaint, is challenged in defendants' pending Motion for Partial Summary Judgment.

reasons having no connection to her race and, alternatively, if it should be found that race placed any role in refusing to rent an apartment to Edwards, that decision was made as part of a lawful program required by responsible government agencies to create and maintain racial and economic integration at Atrium Village.

On March 15, 1985 Judge Getzendanner referred this case to a Magistrate to hear and enter orders on discovery motions and conduct pretrial conferences and related proceedings, including preparation of the final pretrial order. She also requested the Magistrate to rule on defendants' fully briefed motions for summary judgment. In a second order of reference dated May 1, 1985, Judge Getzendanner requested the Magistrate to put the case in a trial posture and stated that the case should be returned to the court when the final pretrial order has been prepared.

The principal issues raised in defendants' first motions for summary judgment were whether Edwards was rejected as a tenant for non-discriminatory reasons and whether her claims are barred in any event because she allegedly failed to meet normal tenant qualification requirements. The legality of the defendants' quota system was *not* briefed or decided. This court's Report and Recommendation dated August 19, 1986 focuses principally on whether there are disputed questions of material fact on other issues—whether Edwards was rejected for non-discriminatory reasons and whether her claims are barred by the "same decision" defense recognized in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). This court concluded that Edwards' claims against defendant O & M based on the Fair Housing Act are barred by the limitations period provided in former 42 U.S.C. § 3612(a) but that in all other respects defendants' motions for summary judgment should be denied. By order dated September 22, 1986 the time for filing objections to that Report and Recommendation was extended to the date when the final pretrial order is filed with Judge Getzendanner.

Discovery in this case closed on January 29, 1987. The parties then filed cross motions for summary judgment. The defendants also moved to reconsider certain aspects of the Report and Recommendation of August 19, 1986 and filed a motion for partial summary judgment and, alternatively *in limine*, with respect to the legality of Atrium Village's use of integration maintenance procedures. These motions directly raise the issue of the legality of defendants' quota system.

On July 23, 1987, before briefing of those motions was completed, the United States filed its complaint against Atrium Village Associates, Chicago Orleans Housing Corporation and Crane Construction Company, alleging that those defendants have pursued a policy and practice of discrimination on the basis of race, color and national origin in the rental of apartments at Atrium Village in violation of the Fair Housing Act of 1968. *United States v. Atrium Village Associates, et al.*, 87 C 6527.

On August 7, 1987, defendants filed an agreed motion for determination of relatedness pursuant to Local Rule 2.31. On the same date Judge Getzendanner found that the *Edwards* and *United States* cases are related. On August 18, 1987, Judge Getzendanner referred the *United States* case to the undersigned. By orders dated September 10, 1987 the clerk of the court and all parties were directed to serve all notices and filings in each case on the attorneys of record in the related case.

The court held a conference in chambers on September 10, 1987 with the attorneys in both cases. It was apparent that the legality of defendants' quota system was the central issue in the *United States* case and a potentially dispositive issue in the *Edwards* case. Both sides in the *United States* case believed that after discovery that issue would be submitted for decision on motions for summary judgment. The court concluded that the pending motions for summary judgment in the *Edwards* case would be held pending the completion of discovery and submission of summary judgment motions in the *United States* case. The parties in the *United States*

case were directed to proceed with discovery.

In the *United States* case the defendants deny any violation of the Fair Housing Act. Their answer alleges that the system of integration maintenance practiced at Atrium Village was lawfully required by HUD, IHDA and the City of Chicago, that system is lawful since its use was necessary to create and maintain racial integration and the United States is estopped from bringing this lawsuit because the defendants acted in good faith and justifiably relied on the actions of HUD and IHDA.

Defendants served initial discovery requests which sought information about how HUD and other federal agencies have applied and interpreted the Fair Housing Act. The United States and the defendants were unable to agree about several of those discovery requests. Defendants filed a motion to compel discovery on December 2, 1987. This court entered a memorandum and order on that motion on January 7, 1988 which, among other things, directed the government to submit a proposed discovery plan. After the government filed its plan further briefs were received. The court entered a memorandum and order on March 15, 1988 ruling on defendants' objections to that plan. The government objected to one of those rulings. On June 16, 1988 Judge Zagel overruled those objections.

The pending discovery by the government is very substantial. Among other things, the government has been ordered to produce information and documents going back to 1968 from files of the Justice Department, HUD, the Department of Education and the Veterans Administration relating to instances in which 1) the United States has required or authorized the use of quotas to foster housing integration, 2) opinions have been issued by federal agencies or employees relating to the lawfulness of quotas in housing, 3) action has been taken against the use of quotas in housing and 4) government officials have suggested or supported amendments of federal housing legislation to prohibit the use of racial quotas or integration maintenance. Discovery against HUD, the agency from which most of the pertinent documents and information will come, is proceeding in three stages. In the first stage, information and documents will be produced from HUD headquarters in Washington and HUD's Chicago office. The second stage applies to discovery requests seeking responses from HUD on a nationwide basis and will be implemented only if defendants are not satisfied with the first stage production. The second stage would involve compiling from the other nine HUD regional offices a list of files in which responsive material may be located. The third stage would involve the retrieval and production of documents and information from the files listed at stage two, but only at defendants' request. The government has reserved its right to object to the implementation of stage three as unduly burdensome. The government initially estimated that the first stage would require a minimum of nine months to complete. See discovery plan of the United States filed February 8, 1988 at 16. At a status call on June 29, 1989 the government said that it expected to begin delivery of first stage discovery materials within the following six weeks. Apparently, responsive documents have been gathered but decisions are required at the Assistant Attorney General level as to the assertion of privilege claims for some of the documents.

*Edwards' Motion*

Edwards asked the government to sue Atrium Village [4] but may be sorry that she did. She is now unhappy about the prospect of extended delay if her case continues to be held in abeyance until the *United States* case is ready for decision—thus, her motion for expedited trial. In that motion she argues that the alleged purpose of defendants' discovery requests of the United States is to allow them to present their defense that the quotas used at Atrium Village were required by HUD and IHDA but that defendants are precluded from presenting such a defense in her case because they have denied that race was a

**4.** See Exhibit 1 to Defendants' Response to Plaintiff's Motion for Expedited Trial.

factor in their consideration of Edwards' application for an apartment at Atrium Village. On that reasoning, any documents indicating that the government required a racial quota are irrelevant in her case. She maintains that defendants are seeking needless delay and that in recognition of her advanced age justice would be served by an order closing discovery and an immediate trial. She cites 42 U.S.C. § 3614 requiring that cases brought under the Fair Housing Act shall be expedited. She fails to note that that section was repealed in 1984. P.L. 98–620 Title IV § 402, ¶ 40, 98 Stat. 3360.

The United States does not object to the holding of a separate trial in the *Edwards* case "as long as the issue of the legality of the use of racial quotas to select tenants at federally assisted housing, which is the central issue in the United States' case, is not presented for determination." United States Response at 4. The government and defendants agree that it would be premature to rule on that issue until the facts have been completely developed and briefed in the *United States* case. The government recognizes that the defendants have raised two defenses to Edwards' claim, that she was rejected for non-discriminatory reasons and, alternatively, that her rejection was based on the use of a lawful racial quota. The government suggests as an alternative that the issues in the *Edwards* case be bifurcated. The parties would now litigate the first issue, whether Edwards' application was denied because of her race or for non-discriminatory reasons, with the issue of the legality of the racial quota reserved for subsequent ruling at the time the *United States* case is ready for decision. Under this proposal, if Edwards prevailed at trial on the first issue of the grounds for her rejection, the second issue would be held for later ruling with the *United States* case, but if the defendants prevailed on their claim that they rejected Edwards for non-discriminatory reasons, the quota issue would not have to be reached in her case. Edwards' reply appears to embrace the government's proposal for a bifurcated trial. Neither Edwards nor the government have said how her remaining claims of religious discrimination and common law fraud should be handled if her case is bifurcated.

*Discussion*

The court continues to believe that the issue of the legality of the Atrium Village quota system should be held in abeyance until discovery and briefing are completed in the *United States* case. That course requires that ruling be deferred on the pending motions for summary judgment in *Edwards*. Those motions directly raise the issue of the legality of the defendants' quota system and should be decided before any trial since they may make a trial unnecessary. We have ruled that discovery as to the government's past actions relating to racial quotas in housing may be relevant to whether HUD required or authorized a racial quota at Atrium Village and how the government has interpreted pertinent provisions of the 1968 Fair Housing Act. See January 7, 1988 Memorandum and Order on Defendants' Motion to Compel Discovery at 1. See also Judge Zagel's Order dated June 16, 1988. The legality of racial quotas designed to foster housing integration is an issue of national significance. See *United States v. Starrett City Associates*, 840 F.2d 1096 (2d Cir.1988), cert. denied, —— U.S. ——, 109 S.Ct. 376, 102 L.Ed.2d 365 (1988). There is an important public interest in having that issue decided on the basis of a full factual record. Edwards has not shown any basis for her accusation that defendants are pursuing their discovery against the government for purposes of delay.

Edwards' argument that defendants are precluded from defending against her claim on the ground that their racial quota was lawful requires little comment. Since their answer to the original complaint, defendants have consistently pleaded the legality of their quota as a defense, while contending that that issue need not be reached because Edwards was rejected for non-racial reasons. Rule 8(e)(2) of the Federal Rules of Civil Procedure permits the assertion of alternative defenses "regardless of consistency." Edwards has not pointed to anything in defendants' pleadings or an-

swers to her requests for admissions which limits the defendants' right to assert the legality of the Atrium Village quota system as a defense in her case. As Edwards suggests, it may be difficult to argue both defenses before a jury but defendants have raised that defense in their motion for summary judgment and are entitled to a ruling on the issue.

The legality of defendants' quota system, if established, is not just an alternative defense. It is potentially dispositive of Edwards' principal claims of racial discrimination. If defendants prevail on that issue it may be unnecessary to resolve the dispute about whether Edwards was rejected because of her race. We emphasize *potentially* dispositive because the court does not now address the precise interplay between the legality of the quota system and each of Edwards' claims. Those claims include, in addition to her central claim that she was rejected because of her race, claims of misrepresentations because of her race about the availability of housing in violation of 42 U.S.C. § 3604(d), discrimination on grounds of religion and common law fraud. Even if the court were to rule that defendants' quota system was lawful and that did not dispose of all of Edwards' claims, it would greatly narrow the issues remaining for adjudication.

Turning to the proposal for a bifurcated trial limited to certain issues in the *Edwards* case, F.R.C.P. 42(b) provides that the court may order a separate trial of any claim or separate issue "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition or economy". While Edwards, like any litigant, may be prejudiced by delay and that prejudice is potentially greater because of her advanced age, she has not shown that the bifurcated trial she seeks would be conducive to expedition or economy or would be more convenient than a single trial of all of her claims.

"[A] single trial generally tends to lessen the delay, expense and convenience to all concerned, and the courts have emphasized that separate trials should not be ordered unless such a disposition is clearly neces-

sary." 5 *Moore's Federal Practice,* ¶ 42.03[I] at 42–37–38 (2d ed. 1988). The trial Edwards seeks would not be conducive to expedition or economy since even if Edwards prevails at that trial her key racial discrimination claim will remain unadjudicated. On the other hand, as we have said above, a decision in favor of the defendants on the legality of the Atrium Village quota system may be dispositive of her claims and make any trial unnecessary. At the least, such a decision would greatly narrow the issues remaining for determination in her case.

Neither Edwards nor the government have addressed difficulties that may be posed by a bifurcated trial. Could the issue of whether Edwards was rejected for non-discriminatory reasons be fairly presented to a jury without explaining all of the circumstances, including the Atrium Village quota system? If a full picture is given to the jury, what would the jury be told about the legality of that quota system? The jury could be told that 1) the legality of the quota system had not yet been determined and the jury should not consider that issue, 2) if Edwards was rejected for non-discriminatory reasons Edwards' claim will fail and 3) if she was rejected because of her race, further proceedings would be necessary to determine whether defendants' conduct was unlawful. *Quaere,* whether the issues could be fairly framed in this or any other way which would avoid substantial jury confusion. Furthermore, defendants suggest that if a separate trial is had now at which Edwards prevails, the same evidence would have to be heard again at a second trial. Edwards offers no response to that argument. The court is constrained to state its concern that other unexplored difficulties lurk beneath the surface of the bifurcated trial proposed by Edwards and the government.

*Conclusion*

Edwards pleads that she has been waiting patiently for over ten years and any trial on any issue would be progress since she would finally have an opportunity to tell her story in public before a jury of her peers. Defendants say that they are

churches, investors and employees who were trying to create a racially and economically integrated community and they should not be punished by having to pay for two trials of the same facts before the same court. Both arguments have force, but they need not be balanced in order to decide Edwards' motion. Edwards' motion is denied, because, as more fully explained above, the legality of the Atrium Village quota system, a central issue in her case and the *United States* case, should not be addressed until it is ready for decision in the *United States* case. A separate and potentially inconclusive trial would not be conducive to expedition or economy nor would it serve the interests of convenience.